May it please the Court, Jan Norman on behalf of Armando Sossa, the appellant in this case. This is a case that addresses the issue of statutory and equitable tolling. The petitioner filed his original petition in federal court on February 24th, but in that petition he just says, see attached petition, see attached petition, and he omitted the attached petition. Could I ask you just to skip way ahead maybe? I'll skip as far ahead as you'd like. Let's say that we were with you that he's entitled to equitable tolling beyond the May 24th date up until June 9th, right? Because that's the end of the extension that the magistrate judge had granted. He's still, though, two days late. And I don't know, how do you get those extra two days? Okay. The way I get those extra two days, and this is raising the objections to the magistrate's report and also part of the record is that at the point when Mr. Sossa was trying to file his petition in a timely manner, he ran across a problem both with access to the law library, but most importantly, he did not have, he had the petition copied, started reviewing the petition, realized there were missing pages, and could not get back to the law library to finish copying it so that it would be actually filed on time. So at that point he filed an emergency, what he called an emergency request for five days to extend the time. Now, that was coming in just at, you know, It's hard to know exactly when that emergency request was filed because it wasn't actually filed. It arrives at the court, the court says, you know, we're not going to file it because it sends a notice of deficiency, which is actually filed by the magistrate judge, saying you didn't provide a copy to me and you didn't serve it, and also, by the way, I already issued an order saying you only had until June 9th. So we don't exactly know what that motion says. We don't, but we do know from the excerpt of record at 243 to 244, my client argues, lays out what I was just explaining, that he lost, you know, access to the photocopying machine, which is not available on Monday the 9th because the law library is closed. So he's basically, because of the failure of the copy machine to make, you know, to put all the pages in the petition, he was not able to do it. And I would suggest that if that's where, that's the sole point. I don't get the copy machine is what prevented me from filing it, though. Because, I mean, I looked at it. It's quite an elaborate typewritten document, very lengthy. What, I don't understand, why couldn't he just file the original that he had, I guess, that he had in the petition? Well, first of all, he had been admonished in the past for not filing the appropriate number of copies and serving the other side. And, Your Honor, I don't know exact, what I know is what you know and what is on the record with regard to his, he attempted to make copies of his petition. The machine malfunctioned. It was missing pages. He could not get back to the law library because of the way that the prison law library hours were set up. So he was not able to file it on the 9th because there was no, he had no access to the machine. So the idea was that if he had just filed the original, maybe it would have gotten stricken again because you didn't give us a copy for the judge or whatever. Well, yes, and he had been admonished that he was supposed to be filing and serving. And if that is the sole question that this case is going to turn on, I would suggest that the case, this is an issue for an evidentiary hearing to remand. To be remanded for that purpose. Remanded for that purpose. The State also objects to the whole, the amount of time that was given for gap tolling. Who also objects? Well, so he, do we know that the gap, you know, the period of time from when he, in State court when he was appealing.  He did not make a formal ruling on those periods of time. He did not make a formal ruling. What he said is, assuming that we're going to grant him equitable tolling until May 24th, he's, the petition is still untimely because, and then he goes on in the Well, the State had some concerns about that, correct? Yes. The State originally argued in its motion to dismiss that he was not entitled to a, to gap or statutory gap tolling until the end of that period because he had an unreasonable delay. Do we know that that gap tolling was properly calculated? I believe it was. I don't believe, you mean the total number of days? Yes. We're only talking here two days. Correct. I believe that I did the math, but I would be happy to redo it if it would give me two more days. Well, the State, I mean, it seems like if it has to go, it goes back. I mean, the State has to have a chance to explore the whole gap tolling. In other words, you're saying that the magistrate judge basically assumed that the gap, that even if there was gap tolling. Yes, I would not say that he held as a matter of, you know, as a matter of law. So if it went back, then you would have a crack at the two days at the tail end, but the State would have a crack at the gap tolling. Well. Because it wasn't really decided. Yes. The State made an argument that that wasn't entitled because there was a delay between, I believe it was the Superior Court. About four months of the first. Superior Court and the Court of Appeals. Right. Were any of the State filings rejected or as untimely? No. I didn't think so. So. No, they were not rejected untimely, and I would argue that given the time frames that the courts have generally talked about in terms of six months, eight months, 10 months, 15 months, they were certainly within that time. And I also believe that there were arguments that were made as to reasons for equitable tolling during that time period because there were also prison lockdowns and other problems that my client encountered. So what is your best case for the copier problems giving rise to equitable tolling? Is there a case that's most closely on point that you could point us to? All I can think of are the access to the law library ones. I can't think of a. Yes. The access to the law library, that's what I was trying to think, whether it's in any of those particular cases. But certainly the concept that you are prevented from accessing the materials that you need. And in this case, it was the copy machine in the law library, but nevertheless, the fact that he is in prison, this is something that's way beyond his control. He can't just run down to the next copy photo place in town. But the question is, was he diligently trying? Yes. Were these actions beyond his control? Yes. And at least it clearly meets those two criteria for why there should be equitable  And he tried to notify the court. He did everything humanly possible to get his petition in on time. Well, except that he did wait to the last minute. I suppose there could be an argument that if you're in prison and you know that you have limited access to the law library and thus the copier, you better not wait until the very last second to get everything together because precisely this kind of problem might come up. Well, I understand also from, and I don't have the site right off the top of my head, but there are also issues with lockdowns between the period of May 15th and May 30th. So I don't This is one of the things he was trying to get discovery on at the tail end. Correct. To bolster this equitable tolling argument. And I don't know precisely how much access he had between the 30th of May and the, what would have been the 9th of June. The 9th of June was a Monday. He didn't have access to the law library on Sunday. He apparently did have on Saturday or Friday when he was trying to Xerox this. What access he had in that 7-day period between May 30th and June 7th, Your Honor, I don't know. You want to save a minute for rebuttal?  Thank you. Good morning, Your Honor. May it please the Court. Deputy Attorney General Michael Katz for Appellee. I'm going to shift my order in light of the Court's questions and begin talking about the law library access problem. I think it's not a meritorious issue. The Supreme Court tells us in Lewis v. Casey, a 1996 case, that an inmate must show that the inability to use the prison facilities caused an actual harm and unconstitutionally prevented him or her from exercising the fundamental right of access to the court. Here we have a petitioner whose state court conviction became final in January of 2006, January 31st. In 2007, while he was filing one of the state court habeas petitions, he complained, it was a California Supreme Court petition, he complained about lack of library access. This is August in 2007. So any prisoner would know about that, but he in particular knew about it. Well, I'm sorry to cut you off, but what we know from the, I guess it was a prison complaint that he filed, I mean, he lays out in some detail what the problem, he physically could not get the thing together in order to file it on the 9th. And it seems to have been, what he attributes it to, is that he didn't have access to the copier. That seems to be something totally beyond his control. Why wouldn't he get equitable tolling for that? Well, I'm sorry, Judge Walker, I didn't mean to cut you off. As you alluded to earlier when you were talking to opposing counsel, he waited until the last minute. How do we know that? How do we know that he actually had access to that copier until the last minute? Well, we know, Your Honor, that on pages 243 and 244 of the excerpts of record, which are his complaints to the prison staff, he says that he waited until May 13th or 14th of 2008 before he applied for this special permission. So what that means is even though his state court conviction became final January 31st, 2006, even though he was complaining in 2007 to the California Supreme Court that the prison library was closed temporarily. So May 13th, he's still got four weeks before the due date. Four weeks after the second extension request. So he waited. He had a year and three months before any extension requests. Okay. In addition to that, he got two extension requests. So the issue before this ---- How many extension requests did you get to file the motion to dismiss? I don't know, actually. I didn't appellee. I don't know how many. It was four. And then it was filed three days late. But, Your Honor, with respect, that's not the way, that's not the issue before the court. It's not that we say that regardless of that we match the number of extension requests. No, but your point is that he waited until the last minute and that wasn't reasonable. So, first of all, I'm not sure that we know he waited until the last minute because there was at least a contention that there was a lockdown during a significant part of that period. But even if what you say is right, that he asked for the law library access on the 13th, first of all, he's at least alleged that from the 15th to the 30th there was a lockdown, meaning he couldn't get there. And then by the time he gets there, it's already June. And then the copying machine breaks down. It won't work. That's the only way. As counsel says, he can't run down the street to the next Kinko's. But, Judge Canelli, why did he wait to – the question before this Court is, is it reasonable to grant him equitable tolling when there's no evidence that he asked for – there's absolutely no evidence in the record that he asked for law library access before the 13th of May and it was denied to him. No evidence at all. It would be unfair to surmise that. Why aren't you as a prisoner entitled to use every day of the deadline that's been given to you? You are, Judge Watford. But when you come back and ask for equitable tolling, you have to show more than that. You can't just say, I felt like waiting until the last minute. You have to show that circumstances beyond your control prevented you. I feel like that's a factual determination that needs to be made. Well, Judge Piaz, I disagree with that respectfully because I don't think – I don't think there's a – this Court to look at the facts. But I don't think that in every case it's proper to send this back to the magistrate judge. We – there's no reasonable inference you could make from the facts in the record. I'm sorry? We don't know. Well – We don't know what the real facts will be once it gets presented to the magistrate judge or the district court, whoever conducts an evidentiary hearing. Well, Your Honor, we know that – Somebody's got to determine whether or not, in fact, they're true. Your Honor, the problem for Petitioner is this. He had an ample opportunity to raise all the statements and factual allegations that were good for him. Even assuming that everything he raised is true, because there's nothing else that he raised to account for this whole period, he can't win unless you assume facts that he didn't raise. He had a chance in his opposition to the motion to dismiss. He had a chance in his – in his objection to the report and recommendation. Then we have what his counsel raised. So in order to get this to an evidentiary hearing, unless you want to say that any time facts are – He did raise it, though. I mean, we have this motion for the five-day emergency extension that the magistrate judge wiped off of the record, so we don't even know what it says. So, I mean, he did – he did allege something about this last-minute delay, didn't he? Well, he didn't – what we know, Your Honor, is based on what he told the prison staff. Right. In the – that's the record I just quoted. And based on all the other things that I just mentioned, which are part of the record, there's no reason to believe – and certainly his counsel would be suggesting otherwise if it were true – there's no reason to believe that in this emergency request five days before the deadline, they added new facts. There's absolutely nothing to suggest that. So here's a person – We don't know what the motion said because it wasn't – the district court or the magistrate judge didn't allow it to be filed. Well, but there's no reason to think that he wouldn't mention that anywhere else in the record. I mean, he – go ahead, Your Honor. You're missing my point. The point is he – I think the point is he did. So he says – and he says in the objections to the R&R and he says in the grievance that the problem at the last minute was this whole problem with the copying machine. So he said that. And so if you assume – and I grant you – I understand that you've got issues about the prior extensions and whether he was entitled to rely on what the magistrate judge said in extending it through June 9th. But if you accept it up to that point, we're really talking about two days. And it seems like he did attempt to give an explanation for the two days in this last-minute motion that he filed. It's an explanation, but it doesn't explain why – it's not a sufficient explanation because it doesn't account for why he waited until May 13th to ask. And although he has the option to allocate his time, he still has to meet the standards for equitable tolling, which is that events beyond his control. Well, let me give you a theory here. I have no clue as to whether this is in the record, but, you know, district judges deal with these things and we get them. So a lot of prisons prioritize access to the law library based on what your deadline is. If your deadlines weigh in the future, they won't give you access to the law library. If your deadline's close, then you get put higher up on the list for sort of the obvious reasons. There's not a lot of room in the law library. You don't want to have 50 prisoners down there at the same time. So maybe at an earlier point in time he couldn't have gotten to the law library because his deadline would have been too far off. We don't know is the point, and so that's why – why doesn't there need to be more factual development of this? Because, Judge Canelli, if that happened, there's no reason that Petitioner would have failed to mention it all the other times he had chances to complain. He would have mentioned it right at the get-go when he filed his opposition to our motion to dismiss, and he also would have mentioned it at – during his objections to the R&R. There's no reason that he would have delayed this long. So that's assuming a lot, but I know my time is short, and if I may, I just want to mention one other point. We're making assumptions that he gets tolling until these two days, and what we have here is a Petitioner who waited until he filed his objections to the R&R, before he ever mentioned this excuse about how he thought the extension request was the same thing as an ADPA deadline. He waited until then. So that tells you two things. First of all, it tells you – You're saying that he wasn't entitled to rely on the magistrate saying, you have until June 9th to file this? He wasn't, Your Honor, for a couple reasons. First of all, subjectively, it's clear that he did not believe that because he didn't mention that in his opposition to our motion to dismiss. You would think that somebody who really was misled would say it right away, just like if the stop sign was blocked by a bush, you would tell the police officer, officer, I couldn't see the stop sign. All right. There's no reason why Petitioner would have waited until his objections to the R&R to mention that, if it were subjectively true. I mean – I mean, we're talking about tolling. I just did counting days. We had to spend a lot of time just counting up all the days to figure out whether, in fact, he needed equitable tolling to get beyond June 9th, right? It's not something that's obvious to a pro se prisoner. What is obvious, Your Honor, is if he was misled subjectively by the extension request. That doesn't require any lawyer to explain it to him. As a matter of fact, he mentioned it himself without a lawyer in the objections to the report and recommendation. It doesn't require a lawyer to explain it. It's intuitive. Well, I'm just not following your argument then. I'm saying it makes sense to me that he should get tolling at least through June 9th. He still has this problem with the two days. But you're saying he's not even entitled from May 24th to June 9th? He's not entitled to tolling today? He's not, Your Honor, for two reasons I know. My time is running short. He didn't – one, he didn't subjectively believe. He wasn't cruelly confused subjectively. Because if he had been – He thought he had to file by May 24th, you're saying? Yes. Because on June 9th – Then why did he ask for the five-day emergency extension from the 9th to the 14th if he didn't think the 9th was the right date? He thought it was the right date based on the extension request, but he didn't think that that had anything to do with the ADPI. The second thing is Davey McDonough. Nobody in his position – Davey McDonough was two years earlier. In particular, footnote 6 of Davey McDonough says, you cannot expect – it says that district courts don't have the state habeas records until they get an answer on the merits from Respondent most of the time. So he's responsible for knowing that. Nobody in his position could read Davey McDonough and think that this particular magistrate judge was extending the ADPI deadline when the magistrate judge granted an extension request. He's responsible for knowing that law. This would be a different case if Davey McDonough did not exist. So we've got Davey McDonough. Objectively, no petitioner in his position could have believed that. And in addition to that, on top of that, we have his subjective belief. Whatever some other petitioner might have thought, clearly this one did not think, was not confused. Because if he had been confused, he would have mentioned that at his first opportunity. He wouldn't have waited to make up an excuse during his objections. And that's what the district court – I don't want to say implied, but that's a reasonable inference from the district court's comments. And that's why it's not entitled to tolling even until June 9th. Roberts.  You're over your time. Thank you very much. Thank you, Your Honor. I'm going to have to talk really quickly. I don't understand this argument that the Respondent keeps raising that he didn't raise it in his opposition to the motion to dismiss. Neither did Respondent. They filed the motion to dismiss on the grounds that it was not entitled to gap tolling and that it didn't relate back. My client simply responded to those two arguments. He had no idea that anybody was going to come in and say that the magistrate judge's orders were immaterial. He assumed the magistrate's orders went until he got the R&R. So he raised that response at the first opportunity he had, which was at the objections. Secondly, Your Honor, I believe I haven't – I would like to you to look at the second volume excerpt of records, for example, 241, where my client shows this argument that he's not doing anything and he's waiting until March 13th. And this is another appeal form just saying to the staff, you know, I now have April 11th to comply and I only can go to the law library three days and it's closed two days of those three days. And they say, well, that's just too bad in response to that. So he is making diligent efforts to maximize his time in the law library to prepare his work, not just by this one last, you know, five days, all through this entire period when he's trying to prepare this petition, which is why, Your Honors, I believe strongly that if the Respondent's going to argue he wasn't doing this, he wasn't doing that, this is clearly a case for an evidentiary hearing. Roberts. Thank you, Your Honors. Thank you, counsel. We appreciate your arguments, both sides. The matter of Sosa v. Diaz is submitted at this time. Thank you.
judges: Kennelly, Paez, Watford